| | |
|---|---|
| 1 | JEFFREY A. TOPOR (SBN 195545) |
| | jtopor@snllp.com |
| 2 | ARVIN C. LUGAY (SBN 242599) |
| | alugay@snllp.com |
| 3 | SIMMONDS & NARITA LLP |
| | 44 Montgomery Street, Suite 3010 |
| 4 | San Francisco, CA 94104-4816 |
| | Telephone: (415) 283-1000 |
| 5 | Facsimile: (415) 352-2625 |

Attorneys for Defendant
Cavalry Portfolio Services, LLC

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESUS VICTOR RODRIGUEZ, | CASE NO.: 11-CV-1837-LAB-MDD |
| Plaintiffs, | **DEFENDANT'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION** |
| vs. | |
| CAVALRY PORTFOLIO SERVICES, LLC, | Date: February 6, 2012<br>Time: 11:30 a.m.<br>Crtrm: 9, Second Floor |
| Defendant. | The Honorable Larry A. Burns |

TO THE CLERK OF THE ABOVE-ENTITLED COURT:

PLEASE TAKE NOTICE that on Monday, February 6, 2012 at 11:30 a.m. in courtroom number 9 of the above Court, located at 940 Front Street, San Diego, California, 92101, the Honorable Larry A. Burns presiding, defendant Cavalry Portfolio Services, LLC ("Cavalry") will and hereby does move this Court for an Order, pursuant to Rule 56 of the Federal Rules of Civil Procedure, granting summary judgment in its favor.

This motion is made on the grounds that there is no competent admissible evidence to show that Cavalry engaged in any conduct in violation of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq*.

The Motion will be based on this Notice of Motion and Motion, the Memorandum of Points and Authorities in Support of the Motion, the Declaration of Terry W. Rivera, all of the other papers on file in this action, and such other and further evidence or argument as the Court may allow.

DATED: December 9, 2011           SIMMONDS & NARITA LLP
                                  TOMIO B. NARITA
                                  JEFFREY A. TOPOR

                                  By:  s/Jeffrey A. Topor
                                       Jeffrey A. Topor
                                       Attorneys for Defendant
                                       Hunt & Henriques

---

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

After plaintiff Jesus Victor Rodriguez ("Rodriguez") defaulted on his Well Fargo Bank credit cards, leaving an unpaid balance of more than $100,000.00, the bank charged off the unpaid accounts and sold them to Cavalry SPV I, LLC, which assigned the accounts to defendant Cavalry Portfolio Services, LLC ("Cavalry"), for collection.

Rodriguez has sued Cavalry, alleging that it violated the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.* ("FCRA" or "the Act"). Rodriguez's sole factual allegation is that Cavalry obtained his consumer credit report "without permissible purpose." The undisputed evidence establishes that Cavalry had a permissible purpose under the FCRA for accessing Rodriguez's credit report: skip tracing and attempting to collect a debt. Cavalry is entitled to summary judgment as a matter of law.

## II. UNDISPUTED MATERIAL FACTS

Cavalry SPV I, LLC purchases unpaid receivables from a variety of credit grantors, including banks, credit unions, consumer finance companies and automobile finance companies. On October 29, 2010, Cavalry SPV I, LLC bought a portfolio of unpaid, charged-off credit card accounts from non-party Wells Fargo Bank, including two accounts belonging to Rodriguez. Together, the total amount due on the accounts was $102,839.86. *See* Declaration of Terry W. Rivera In Support of Defendant's Motion for Summary Judgment ("Rivera Decl."), at ¶ 2.

On November 1, 2010, Cavalry SPV I, LLC assigned Rodriguez's accounts to Cavalry for collection. As part of the collection process, Cavalry corresponds with and telephones debtors. To ensure that it has accurate addresses and telephone numbers for the debtors from whom it attempts to collect, Cavalry

engages in "skip tracing," a process designed to obtain or confirm location information. One source that Cavalry uses in this process is Experian, a consumer credit reporting agency, which issues consumer credit reports. *See id.* at ¶¶ 3-4.

On January 8, 2003, Cavalry entered into a Subscriber Service Agreement with Experian, certifying and warranting that it would request and use credit information received from Experian solely in connection with credit transactions or for other "permissible purposes" as defined by the FCRA. Cavalry further certified and warranted that it would request and use information received from Experian solely in connection with transactions involving the consumer as to whom such information was sought, and would not request or use such information for purposes prohibited by law. On January 30, 2003, Cavalry separately certified to Experian that it would use consumer credit information it obtained from Experian for collection purposes. *See id.* at ¶ 5.

On November 16, 2010, Cavalry ordered a copy of Rodriguez's consumer credit report from Experian. Cavalry did so to confirm that it had the correct contact information for Rodriguez, which it needed to contact him regarding payment of the accounts, and as part of its analysis into Rodriguez's ability to repay the accounts. Subsequently, Cavalry attempted to contact Rodriguez by telephone, and sent him a number of letters seeking payment. *See id.* at ¶¶ 6-7.

### III. ARGUMENT

#### A. Standards Governing Summary Judgment

Summary judgment "shall" be granted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a). As the moving party, Cavalry may discharge its burden by "'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *See Celotex Corp. v. Catrett*,

477 U.S. 317, 325 (1986); *accord Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (quoting *Celotex*).

To survive this motion for summary judgment, Rodriguez "must present competent evidence that creates a genuine issue of material fact." *See Federal Election Comm'n v. Toledano*, 317 F.3d 939, 950 (9th Cir. 2002). The materiality of a fact is determined by the underlying substantive law. *See State of Calif., on Behalf of Calif. Dept. of Toxic Substances Control v. Campbell*, 138 F.3d 772, 782 (9th Cir. 1998). "In short, 'summary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the non-moving party.'" *Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) (affirming summary judgment on FDCPA claims).

### B. A "User" May Obtain Or Use A Consumer's Credit Report If The User Has A Permissible Purpose For Obtaining Or Using The Report

Congress passed the FCRA as part of its efforts to balance the legitimate needs of users of consumer information (like Cavalry) with its concern for protecting consumer privacy. *See* 15 U.S.C. §§ 1681(a), (b); *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1153-54 (9th Cir. 2009), *cert. denied*, _S. Ct. _, 2010 WL 1047483 (U.S. Oct. 4, 2010) (No. 09-1142). The FCRA was aimed at curbing the industry's worst abuses – it was not designed to prohibit all access to a consumer's credit file. "The Fair Credit Reporting Act . . . was 'a product of political compromise enacted for the specific purpose of curbing only the *worst abuses* by the credit reporting industry and its clients." *See Riley v. Equifax Credit Info. Servs., Inc.*, 194 F. Supp. 2d 1239, 1244 (S.D. Ala. 2002) (quoted citation omitted and emphasis added).

To further these competing interests, the FCRA governs how consumer credit information may be gathered, disseminated and used. A "consumer reporting agency ["CRA"] may furnish a consumer report" if the consumer

provides written permission. *See* 15 U.S.C. § 1681b(a)(2). A consumer's consent to the release and use of the information, however, is not required. *See Hyde v. RDA, Inc.*, 389 F. Supp. 2d 658, 663 n.1 (D. Md. 2005).

Instead, "[t]he FCRA allows a party to obtain a consumer credit report without the consumer's consent or knowledge if that party certifies that the report is being pulled for a permissible purpose." *Stergiopoulos v. First Midwest Bancorp., Inc.*, 2004 WL 5550488, *2 (N.D. Ill. June 23, 2004), *affirmed* 427 F.3d 1043 (7th Cir. 2005); *accord Murray v. Sunrise Chevrolet, Inc.*, 441 F. Supp. 2d 940, 945 (N.D. Ill. 2006) ("Under FCRA, a consumer's credit report may only be obtained with the consumer's written consent **or** for certain permissible purposes." (emphasis added)); *Gamble v. Citifinancial and Landers*, 2002 WL 31643028, *2 (D. Conn. Nov. 19, 2002) ("Under the FCRA, there are circumstances pursuant to which a consumer's credit report may be obtained without the consent or even the knowledge of the complaint."); 16 C.F.R. Pt. 600, App (2005) ("When permissible purposes exist, parties may obtain, and consumer reporting agencies may furnish, consumer reports without the consumers' permission or over their objection."). Congress set forth six permissible purposes under which a CRA may furnish a consumer report. *See* 15 U.S.C. § 1681b(a)(3)(A-F).

As relevant here, the FCRA provides that a CRA may "furnish a consumer report . . . [t]o a person[1] which it has reason to believe":

> intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review *or collection of an account of, the consumer*;

---

[1] A "person" is "any individual, partnership, corporation, trust, estate, cooperative, association, government or governmental subdivision or agency, or other entity." 15 U.S.C. § 1681a(b).

*Id.* § 1681b(a)(3)(A) (italics added). A "person" may "use or obtain a consumer report" if the report "is obtained for a purpose for which a consumer report is authorized to be furnished under this section." *Id.* § 1681b(f)(1).

Taken together then, sections 1681b(a)(3)(A) and 1681b(f)(1) permit "persons who intend to use credit information to collect a debt owed by the consumer" to obtain and use consumer reports from CRAs, even if the consumer has not consented to the release of the report. *See Baker v. Trans Union LLC*, 2010 WL 2104622, *7 (D. Ariz. May 25, 2010); *see also Great Seneca Fin. Corp. v. Fisher*, 2005 WL 1875664, *2 (D. Kan. Aug. 8, 2005) (creditor may obtain consumer report under § 1681b(a)(3)(A) "without the debtor's permission if the creditor 'intends to use the information in connection with . . . review or collection" of consumer's account).[2] "'Whether a permissible purpose existed is a question of law.'" *Miller v. Rubin & Rothman, LLC*, 2011 WL 4359977, *3 (D. Minn. Sept. 19, 2011), quoting *Breese v. TRIADvantage Credit Servs., Inc.*, 393 F. Supp. 2d 819, 821 (D. Minn. 2005).

### C. The Undisputed Evidence Establishes That Cavalry Had A Permissible Purpose For Accessing Rodriguez's Consumer Report

Rodriguez's complaint contains a single factual allegation: "On November 16, 2010, Defendant initiated a hard pull of Plaintiff's credit report from Experian without permissible purpose." *See* Complaint (Doc. No. 1) at ¶ 6. The incontrovertible evidence establishes that Cavalry had the requisite permissible purpose when it requested Rodriguez's credit report from Experian.

---

[2] Even persons who merely desire to determine whether a debt is collectible may obtain and use a consumer report under section 1681b(a)(3)(A). *See Washington v. South Shore Bank*, 2004 WL 2038425, *5 (N.D. Ill. Aug. 27, 2004) (concluding that "obtaining a credit report to determine . . . whether a creditor should even pursue a delinquent debt" is a permissible purpose).

RODRIGUEZ V. CAVALRY PORTFOLIO SERVICES, LLC (CASE NO. 11-CV-1837-LAB-MDD)
DEFENDANT'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT;
MEMO IN SUPPORT                                                                                              5.

Debt collection and "skip tracing" – which are the only reasons that Cavalry accessed Rodriguez's credit report – are both permissible purposes under section 1681b(a)(3)(A) of the Act. *See Baker*, 2010 WL 2104622 at *7 ("Because skip-tracers are in the business of locating debtors to facilitate the collection of debts by creditors," the court explained, "their practices fall within the scope of permissible purposes under § 1681b(a)(3)(A)."); *McNall v. Credit Bureau of Josephine County*, 689 F. Supp. 2d 1265, 1273 (D. Or. 2010) (rejecting argument that "running a credit report to obtain" consumer's address was not a permissible purpose); *Great Seneca Fin. Corp.*, 2005 WL 1875664 at *2; *Washington*, 2004 WL 2038425 at *5; *Wilson v. Sessoms*, 1998 WL 35305548, *4 (M.D.N.C. March 16, 1998) (recognizing that skip tracing "is generally a permissible purpose under the FCRA").

Here, on November 1, 2010, Rodriguez's accounts were assigned to Cavalry for collection. Approximately two weeks later, Cavalry requested and obtained Rodriguez's credit report from Experian to confirm his contact information, and to ascertain whether he had the capability to repay his debts. Cavalry then tried to reach Rodriguez by telephone, and sent him a number of letters seeking payment. Cavalry indisputably had a permissible purpose for obtaining Rodriguez's credit report. *See, e.g., Miller*, 2011 WL 4359977 at *4 (granting summary judgment in favor of debt collection law firm that pulled debtor's credit report to acquire her phone number, address and sources of income to aid in collection of debt, even though credit report issued by reporting agency contained information for both debtor and plaintiff). There is no evidence that Rodriguez can point to that would prove his claim that Cavalry lacked a permissible purpose for pulling his credit report. Cavalry is entitled to summary judgment.

//

//

## III. **CONCLUSION**

For the foregoing reasons, Cavalry respectfully requests that the Court issue an Order granting summary judgment in its favor, pursuant to Rule 56 of the Federal Rules of Civil Procedure.

DATED: December 9, 2011        SIMMONDS & NARITA LLP
                                         JEFFREY A. TOPOR
                                         ARVIN C. LUGAY

                                  By:  s/Jeffrey A. Topor
                                         Jeffrey A. Topor
                                           Attorneys for Defendant

**PROOF OF SERVICE**

I, the undersigned, declare:

I am employed in the City and County of San Francisco, California. I am over the age of eighteen years and not a party to this action. My business address is 44 Montgomery Street, Suite 3010, San Francisco, California 94104-4816.

I am readily familiar with the business practices of my employer, Simmonds & Narita LLP, for the collection and processing of correspondence by mailing with the United States Postal Service and that said correspondence is deposited with the United States Postal Service that same day in the ordinary course of business.

On this date, I served a copy of the following document:

1) **DEFENDANT'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION**

by causing such document to be placed in a sealed envelope for collection and delivery by the United States Postal Service to the addressee indicated below:

<u>**VIA U.S. MAIL**</u>

Jesus Victor Rodriguez
10531 4s Commons Drive, Suite 426
San Diego, CA 92127
Plaintiff

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed at San Francisco, California on this 9th day of December, 2011.

*Sally Koo*
_____
Sally Koo