1  JEFFREY A. TOPOR (SBN 195545)
   jtopor@snllp.com
2  ARVIN C. LUGAY (SBN 242599)
   alugay@snllp.com
3  SIMMONDS & NARITA LLP
   44 Montgomery Street, Suite 3010
4  San Francisco, CA 94104-4816
   Telephone: (415) 283-1000
5  Facsimile:   (415) 352-2625

6
7  Attorneys for Defendant
   Cavalry Portfolio Services, LLC

8
                    UNITED STATES DISTRICT COURT
9
                 SOUTHERN DISTRICT OF CALIFORNIA
10

11

12  JESUS VICTOR RODRIGUEZ,          )  CASE NO.: 11-CV-1837-LAB-MDD
                                     )
13              Plaintiffs,          )  **REPLY MEMORANDUM OF**
                                     )  **POINTS AND AUTHORITIES IN**
14                                   )  **SUPPORT OF DEFENDANT'S**
                                     )  **MOTION FOR SUMMARY**
15         vs.                       )  **JUDGMENT**
                                     )
16  CAVALRY PORTFOLIO               )  Date:    February 6, 2012
    SERVICES, LLC,                   )  Time:    11:30 a.m.
17                                   )  Crtrm:  9, Second Floor
              Defendant.            )
18                                   )  The Honorable Larry A. Burns
                                     )
19  ─────────────────────────       )

20

21

22

23

24

25

26

27

28

## I.      INTRODUCTION

Plaintiff Jesus Victor Rodriguez ("Rodriguez") has not offered a single piece of evidence – as is his burden – to establish that defendant Cavalry Portfolio Services, LLC ("Cavalry") lacked a permissible purpose for obtaining his credit report.  Rodriguez does not deny that he had two Wells Fargo Bank credit cards; that he defaulted on them; or that the bank charged off the unpaid accounts and sold them to non-party Cavalry SPV I, LLC, which assigned them to Cavalry for collection.  Nor does he disagree that skip tracing and attempting to collect a debt are, as a matter of law, "permissible purposes" for accessing a consumer's credit report under the Fair Credit Reporting Act.  Rodriguez also does not challenge or refute the evidence Cavalry submitted showing that these were the reasons why it obtained his credit report.  Instead, Rodriguez argues only that there is insufficient evidence of the two unpaid accounts or of the transfer of ownership of those accounts from Wells Fargo to Cavalry SPV I, LLC.  Even if this were true (which it is not), it does not prevent the entry of summary judgment.

The now un-refuted evidence establishes that Cavalry believed it had a permissible purpose for pulling Rodriguez's credit report, because it did so as part of its efforts to collect his unpaid $100,000 debt.  Cavalry is entitled to summary judgment.

## II.     ARGUMENT

Rodriguez asserts that he never permitted Cavalry "to obtain his credit report."  *See* Affidavit of Jesus Victor Rodriguez at ¶ 6 (found at Doc. 7 p. 10).  This is irrelevant.  Although a "consumer reporting agency *may* furnish a consumer report" if the consumer provides written permission, *see* 15 U.S.C. § 1681b(a)(2) (italics added), a consumer's consent to the release and use of the information is not required, *see Hyde v. RDA, Inc.*, 389 F. Supp. 2d 658, 663 n.1 (D. Md. 2005).

Rodriguez concedes by his silence – he has wholly failed to address any of the pertinent legal authorities cited by Cavalry – that "[t]he FCRA allows a party to obtain a consumer credit report without the consumer's consent or knowledge if that party certifies that the report is being pulled for a permissible purpose." *Stergiopoulos v. First Midwest Bancorp., Inc.*, 2004 WL 5550488, *2 (N.D. Ill. June 23, 2004), *affirmed* 427 F.3d 1043 (7th Cir. 2005).  Rodriguez further concedes that the FCRA permits a CRA to furnish a consumer report to one whom it reasonably believes

> intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review *or collection of an account of, the consumer*;

15 U.S.C. § 1681b(a)(3)(A) (italics added).[1]  Concomitantly, one may "use or obtain a consumer report" if the report "is obtained for a purpose for which a consumer report is authorized to be furnished under this section."  *Id.* § 1681b(f)(1).  There is thus no disagreement that "persons who **intend** to use credit information to collect a debt owed by the consumer" may obtain and use consumer reports from CRAs, even if the consumer has not consented to the release of the

---

[1]  Rodriguez states that there "is no statement" in Mr. Rivera's declaration concerning the type of account at issue.  *See* Opposition at p.3, ¶ 18; *see also id.* at ¶ 20.  On the contrary, Mr. Rivera declared that the accounts were "credit card" accounts.  *See* Rivera Decl. at ¶ 2.  To the extent that Rodriguez is suggesting that it is impermissible to pull a credit report when trying to collect a credit card debt, he ignores such cases as *Huertas v. Galaxy Asset Mgmt.*, 641 F.3d 28, 34 (3d Cir. 2011), *Miller v. Rubin & Rothman, LLC*, 2011 WL 4359977 (D. Minn. Sept. 19, 2011), and *Miller v. Wolpoff & Abramson, LLP*, 2007 WL 2694607 (N.D. Ill. Sept. 7, 2007), all of which found it permissible for a debt collector to access a consumer's credit report in the course of seeking to collect a credit card debt.  Further, the Ninth Circuit has interpreted "collection of an account" as collection of a debt.  *See Hasbun v. County of L.A.,* 323 F.3d 801, 803 (9th Cir.2003).  Any such suggestion is, therefore, meritless.

1   report.  *See Baker v. Trans Union LLC*, 2010 WL 2104622, *7 (D. Ariz. May 25,

2   2010) (emphasis added).[2]

3        Rodriguez suggests that Cavalry bears the burden of proving that it had a

4   permissible purpose for obtaining his credit report.  *See* Opposition at 5, ¶ 26.  He

5   is wrong:  the burden is on him to present evidence sufficient to prove that Cavalry

6   lacked a permissible purpose.  *See Miller v. Rubin & Rothman, LLC*, 2011 WL

7   4359977, *3 (D. Minn. Sept. 19, 2011)*, citing *Phillips v. Grendahl*, 312 F.3d 357,

8   364 (8th Cir. Cir. 2002); *Edge v. Professional Claims Bureau, Inc.*, 64 F. Supp. 2d

9   115, 117 (E.D.N.Y. 1999).  He has not done so, nor can he.

10       Rodriguez does not dispute that debt collection and "skip tracing" are, as a

11  matter of law, permissible purposes for accessing a credit report under section

12  1681b(a)(3)(A) of the Act.[3]  Although he claims that Cavalry has not submitted

13  documentary evidence of the accounts or the transfer of ownership of the

14  accounts,[4] he does not challenge or refute the evidence submitted by Cavalry

15  _____

16      [2] *See also Great Seneca Fin. Corp. v. Fisher*, 2005 WL 1875664, *2 (D. Kan.
    Aug. 8, 2005) (creditor may obtain consumer report under § 1681b(a)(3)(A) "without
17  the debtor's permission if the creditor 'intends to use the information in connection
    with . . . review or collection" of consumer's account).
18

19      [3] *See Baker*, 2010 WL 2104622 at *7; *McNall v. Credit Bureau of Josephine
    County*, 689 F. Supp. 2d 1265, 1273 (D. Or. 2010); *Washington v. South Shore Bank*,
20  2004 WL 2038425, *5 (N.D. Il. Aug. 27, 2004); *Wilson v. Sessoms*, 1998 WL
    35305548, *4 (M.D.N.C. Mar. 16, 1998).
21

22      [4] Such evidence is unnecessary here.  Mr. Rivera establishes his "personal
23  knowledge" sufficient to satisfy the requirements of Rule 602 of the Federal Rules of
    Evidence when he declares that he has reviewed the documents maintained by
24  Cavalry.  *See* Fed. R. Evid. 602 (a "witness may not testify to a matter unless evidence
    is introduced sufficient to support a finding that the witness has personal knowledge
25  of the matter.").  The test for establishing personal knowledge of a matter is
    not particularly stringent – it is simply "whether a jury or other trier of fact could
26  reasonably believe that the witness perceived it."  *United States v. Owens-El*, 889 F.2d
27  913, 915-16 (9th Cir. 1989) (witness had personal knowledge of the identity of his
28

1  explaining <u>why</u> it obtained his credit report from Experian and showing that it

2  certified to Experian that it had a permissible purpose for doing so.  *See* Rivera

3  Decl. at ¶¶ 4-6.[5]  As Mr. Rivera declared, after Rodriguez's accounts were assigned

4

5

6  attacker even though he admitted at time of trial that he did not recall the details of the
   attack); *Stuart v. Unum Life Ins. Co. Of Am.*, 217 F.3d 1145, 1155 (9th Cir. 2000)

7  (clear error to exclude declaration testimony of hospital executive concerning

8  payments made by hospital based on lack of personal knowledge); *United States v.
   Thompson*, 559 F.2d 552, 553-54 (9th Cir. 1977) (restaurant manager had personal

9  knowledge that receipt, allegedly issued before he became manager, was not of type

10 given by restaurant).  An executive may obtain personal knowledge of a matter by
   reviewing corporate records and by relying on the information supplied to him by

11 other company employees.  *See, e.g., In Re Texas E. Transmission Corp. PCB

12 Contamination Ins. Coverage Litig.*, 870 F. Supp. 1293, 1303-04 (E.D. Pa. 1992).
   Nor would the "best evidence rule" (if cited by Rodriguez) bar Mr. Rivera's testimony

13 of the fact that Rodriguez's accounts were purchased from Wells Fargo.  That rule

14 requires a party to produce an original of a writing only in those limited circumstances
   where a party is trying to prove the "content" of that writing.  *See* Fed. R. Evid. 1002.

15 Cavalry does not seek to prove the contents of a document through Mr. Rivera's

16 testimony.  Rather, Cavalry seeks to establish a particular fact, namely, that ownership
   of Rodriguez's accounts was transferred to Cavalry's affiliate, which then assigned

17 the accounts to Cavalry for collection.  Mr. Rivera's testimony alone is sufficient to

18 prove that the accounts were acquired, and Cavalry was not required to have Mr.
   Rivera offer a copy of the acquisition document or any account-related documents into

19 evidence.  *See, e.g., O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 598 (6th Cir.

20 2009) (error to exclude plaintiff's testimony regarding times he reported to work:
   "The best evidence to prove that contention may be the schedules, but requiring the

21 best evidence available (here, apparently, the schedules) to prove something besides

22 the 'content' of the schedules is not what the Best Evidence Rule demands."); *Simas
   v. First Citizens' Fed. Credit Union*, 170 F.3d 37, 51 (1st Cir. 1999) (Plaintiff could

23 prove he filed loan application without producing copy of application itself:  "there

24 is no general rule that proof of a fact will be excluded unless its proponent furnishes
   the best evidence in his power." ).

25

26     [5] Rodriguez states that before Cavalry accessed his Experian credit report, it
   sent him a letter on November 15, 2010, "in contrast to the statement made by

27 [Cavalry's declarant]" that it sent him letters after accessing his credit report.  *See*

28 Opposition at p.3, ¶ 12.  Beyond the fact that Rodriguez provides no evidence to

1  to it for collection, Cavalry requested Rodriguez's credit report from Experian to
2  confirm his contact information, and to ascertain his capability to repay his debts.
3  Cavalry then tried to reach Rodriguez by telephone and sent him letters seeking
4  payment. *See* Rivera Decl. at ¶ 6.[6]

5        That evidence establishes that Cavalry reasonably believed it had a
6  permissible purpose for requesting his credit report. "[S]o long as a user has
7  reason to believe that a permissible purpose exists, that user may obtain a
8  consumer report without violating the FCRA." *Korotki v. Attorney Servs. Corp.*,
9  931 F. Supp. 1269, 1276 (D. Md. 1996). Cavalry indisputably had a permissible
10 purpose for obtaining Rodriguez's credit report. *See, e.g., Miller*, 2011 WL
11 4359977 at *4 (granting summary judgment in favor of debt collection law firm
12 that pulled debtor's credit report to acquire her phone number, address and sources
13 of income to aid in collection of debt, even though credit report issued by reporting
14 agency contained information for both debtor and plaintiff).

15

16

17  support his statement, it is irrelevant whether Cavalry sent him a letter before
18  accessing his credit report. It is undisputed that Cavalry attempted to contact him after
    pulling the report. *See* Rivera Decl. at ¶ 6.

19     [6] Rodriguez does not say anything about these statements in Mr. Rivera's
20  declaration; he does not dispute that Cavalry corresponded with him or telephone him
    in connection with the debt. He claims that the declaration "refers to facts not in
21  evidence before the court," Opposition at p. 6, ¶ 33, presumably a reference to
22  Rodriguez's argument that there is no documentary evidence of the Wells Fargo
    accounts or the transfer of ownership of those accounts. But Paragraph 6 of Mr.
23  Rivera's declaration sets forth all of the facts necessary to explain why Cavalry pulled
24  Rodriguez's credit report. Rodriguez's assertion that the declaration "has not been
    authenticated" – whatever that means – is meritless. Mr. Rivera is a Paralegal and is
25  competent to testify about Cavalry's practices in connection with collecting debts
26  from consumers, as he has personal knowledge of those practices. Mr. Rivera has laid
    an adequate foundation for his declarative testimony in paragraph 1 of his declaration,
27  *see* n. 5 *supra*, and he signed the declaration under penalty of perjury, as required, *see*
28  28 U.S.C. § 1746(2).

Finally, Rodriguez "offer[s] no evidence that [Cavalry's] intent in requesting the credit report was for a purpose other than collecting a debt which is a permissible purpose under section 1681b(a)(3)(A)."[7] *McNall*, 689 F. Supp. 2d at 1273; *see Washington*, 2004 WL 2038425 at *6 (plaintiff "produced no evidence upon which a jury could find that [defendant] lacked a permissible purpose in obtaining her credit report. . . . She has no evidence which calls into question [defendant's] stated reasons. There is no dispute as to any material fact regarding whether [defendant] obtained [plaintiff's] credit report for a permissible purpose under the FCRA."); *Zeller v. Samia*, 758 F. Supp 775, 782 (D. Mass. 1991) (plaintiff presented no evidence to indicating defendant's use of information in credit report was for impermissible purpose). In sum, Rodriguez has not presented a single piece of evidence to prove his claim that Cavalry lacked a permissible purpose for pulling his credit report. Cavalry is entitled to summary judgment.[8]

## III.   **CONCLUSION**

For the foregoing reasons, and the reasons set forth in its opening memorandum, Cavalry respectfully requests that the Court issue an Order granting

---

[7] Rodriguez does not present any evidence in his supporting Affidavit, other than to deny that he permitted Cavalry to obtain his credit report, which as explained above is of no consequence.

[8] Rodriguez states (but provides no supporting evidence) that Cavalry accessed his Trans Union credit report on November 23. *See* Opposition at p.3, ¶ 13. Even if Rodriguez had submitted evidence of this, Cavalry would still be entitled to summary judgment because: (a) Rodriguez does not claim that there was anything improper about this; and (b) Rodriguez has not alleged a claim in his complaint based on Cavalry alleged access of his Trans Union credit report. A party cannot raise a new claim for the first time in opposition to summary judgment. *See Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1292 & 1294 (9th Cir. 2000) (district court correctly prohibited plaintiff from pursuing disparate impact theory at summary judgment stage where complaint alleged only disparate treatment claim).

1  summary judgment in its favor, pursuant to Rule 56 of the Federal Rules of Civil

2  Procedure.

3

DATED:  January 30, 2012            SIMMONDS & NARITA LLP
4                                                   JEFFREY A. TOPOR
                                                     ARVIN C. LUGAY
5

6                                                   By:   s/Arvin C. Lugay
                                                            Arvin C. Lugay
7                                                           Attorneys for Defendant

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# PROOF OF SERVICE

I, the undersigned, declare:

I am employed in the City and County of San Francisco, California. I am over the age of eighteen years and not a party to this action. My business address is 44 Montgomery Street, Suite 3010, San Francisco, California 94104-4816.

I am readily familiar with the business practices of my employer, Simmonds & Narita LLP, for the collection and processing of correspondence by mailing with Federal Express and that said correspondence is deposited with Federal Express that same day in the ordinary course of business.

On this date, I served a copy of the following document:

1)   **REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

by causing such document to be placed in a sealed envelope for collection and delivery by Federal Express to the addressee indicated below:

**<u>VIA FEDERAL EXPRESS OVERNIGHT</u>**
Jesus Victor Rodriguez
10531 4s Commons Drive, Suite 426
San Diego, CA 92127
Plaintiff

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed at San Francisco, California on this 30th day of January, 2012.

_____
Sally Koo